UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHANGZHOU LAOSAN GROUP,    ) | |
|                                    ) | |
|          Plaintiff,   ) | |
|                                    ) | |
|          v.   ) | Civil Action No. 04-1919 (ESH) |
|                                    ) | |
| U.S. CUSTOMS AND BORDER    ) | |
| PROTECTION BUREAU,   ) | |
|                                    ) | |
|         Defendant.   ) | |
| _____ ) | |

**MEMORANDUM OPINION**

Defendant has moved for reconsideration of the Court's April 20, 2005 Memorandum Opinion and Order that rejected defendant's invocation of FOIA's Exemption 4 to withhold documents pertaining to the seizure of plaintiff's merchandise. In light of undisputed evidence that some of the documents previously analyzed under the test for involuntarily submitted documents were, in fact, voluntarily submitted, the Court has reconsidered its prior decision in order to prevent manifest injustice to the innocent third parties that submitted the information. The Court therefore holds that the voluntarily submitted documents may be withheld pursuant to Exemption 4. However, as defendant still has not demonstrated a likelihood that a substantial competitive injury will result, any involuntarily submitted documents or portions thereof withheld solely pursuant to Exemption 4 must be disclosed.

**BACKGROUND**

While the Court need not repeat the facts as set forth in its prior Memorandum Opinion, the factual background underlying this case has now been clarified by the submission of documents and can be summarized as follows. Plaintiff, an exporter of merchandise from China,

shipped the seized merchandise from China for delivery to a consignee in Mexico. The merchandise was to travel from China to Los Angeles, across the United States to El Paso, and then on to Mexico. When the merchandise reached Los Angeles, Company B, a freight forwarder, filed the required entry documents with CBP. Because the merchandise was to be shipped across the United States, but not sold within the United States, it had to be transported by a bonded carrier, identified on the entry form as Company A. However, CBP seized the merchandise because it maintains that the Mexican consignee is fictitious; the identity of Company A was fraudulently used; and the merchandise was never intended to be shipped by bonded carrier across the United States to Mexico, but instead was to be smuggled into the United States for sale. In the course of CBP's evaluation of the suspected smuggling scheme, Companies A and B, businesses that may have been deceived or defrauded by the suspected smugglers, responded to CBP's request for information that could assist in its investigation. Following the seizure of this merchandise, plaintiff submitted a FOIA request for documents relating to the seizure of its merchandise.

In its prior Memorandum Opinion, the Court upheld the government's invocation of all FOIA exemptions except for those withheld solely under Exemption 4. As identified by defendant, those documents were comprised of two categories of information: (1) entry documents and (2) other commercial information (*e.g.*, entry numbers, value and type of merchandise, visa category, purchase order numbers, shipment routing information, IRS and bond numbers, identity of consignees, importers, and carriers). As to the entry documents, defendant argued for a categorical exemption because, in its view, the information contained therein was of such a nature that their disclosure always constituted a risk of competitive injury.

As to the other commercial information, defendant offered only conclusory assertions of competitive injury based upon the type of information at issue. Because defendant characterized both categories of information as involuntarily submitted to the government (*see* Def.'s Mem. on Summ. J. at 12 ("[T]he information received by CBP must be viewed as having been involuntarily submitted.")), the Court naturally applied the test cited by the defendant -- *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974), and based on this test, it denied defendant's motion for summary judgment as to documents withheld solely pursuant to Exemption 4. In particular, the Court refused to accept defendant's invocation of a blanket exemption for the entry documents, and second, it found that defendant had failed to demonstrate sufficient competitive injury for either category of documents. *See Changzhou Loasan Group v. U.S. Customs & Border Prot. Bureau*, No. Civ. A. 04-1919, 2005 WL 913268, at *4-7 (D.D.C. Apr. 20, 2005).

Defendant now seeks reconsideration on two grounds: (1) that it has now shown a likelihood of substantial competitive injury to third parties under the *National Parks* test, since it has submitted declarations to support that claim; and (2) that it was error to apply the *National Parks* test to all of the documents because some were voluntarily submitted by third parties and hence should be protected under the less stringent test set forth in *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc).[1] (*See* Def.'s Mem. on Mot. for Recons. at 3; Decl. of Cary Silahian ("Silahian Decl."); Second Supp. Decl. of

---

[1] The Court notes that none of defendant's previous filings contained a single citation or reference to the *Critical Mass* test for voluntarily submitted information, but instead, they consistently focused solely on the *National Parks* test for involuntarily submitted information. (*See, e.g.*, Def.'s Mem. on Summ. J. at 12-13.)

Joanne Roman Stump ("Stump Decl.").)  In order to avoid any further confusion, the Court required defendant to submit for *in camera* review all documents as to which it was seeking to invoke Exemption 4 and to identify exactly which documents it was asserting a claim under *Critical Mass*, as opposed to *National Parks*.[2]

Given these facts, as well as the Court's *in camera* review of the documents, it now concludes, as explained more fully below, that the motion for reconsideration should be granted, not because of any error by the Court, but rather to prevent manifest injustice to the innocent third parties who voluntarily submitted information to CBP and would otherwise be disadvantaged by defendant's prior mischaracterization of the documents and failure to raise the relevant legal standard.  Applying the *Critical Mass* test to the voluntarily submitted documents, the Court now finds that defendant need not disclose the information withheld pursuant to Exemption 4.  However, the Court affirms its initial holding as to the documents that were involuntarily submitted on the grounds that much of the information contained therein cannot cause a competitive injury because it is in the public domain, or alternatively, that defendant still has not sustained its burden of showing a likelihood of substantial competitive injury from disclosure under the *National Parks* test.

## LEGAL ANALYSIS

### I.    Exemption 4 Tests

As the Court noted in its prior opinion, "[t]he legal standard used to determine whether information is privileged or confidential within the meaning of Exemption 4 varies depending on

---

[2] It is now apparent that defendant seeks to withhold Document Nos. 018-021, 023-030 or portions thereof as voluntarily submitted, and Document Nos. 002-003, 006-007, 009-017, 031-032, 035 or portions thereof as involuntarily submitted.

whether the information was provided to the government voluntarily or if it was required to be provided." *Changzhou Loasan Group*, 2005 WL 913268, at *4. "[F]inancial or commercial information provided to the Government on a voluntary basis is 'confidential' for the purpose of Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass*, 975 F.2d at 879. Information provided involuntarily will not be considered confidential unless disclosure will "(1) . . . impair the government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks*, 498 F.2d at 770 (footnote omitted).

## II.   Voluntarily Submitted Documents

It is clear from defendant's submissions that Companies A and B voluntarily provided Document Nos. 018-021, 023-030 in response to CBP's requests for assistance with its investigation of the suspected smuggling scheme. (*See* Silahian Decl. ¶ 4-5; Stump Decl. ¶ 8.) Plaintiff does not dispute this characterization, but rather alleges that Company B is no longer in business and therefore cannot suffer a competitive injury. (*See* Pl.'s Opp'n to Mot. for Recons. at 2.) Competitive injury, however, is a requirement of the *National Parks* test for involuntarily submitted information and is irrelevant under the *Critical Mass* test for voluntarily submitted information. Because the information was submitted voluntarily, it will be exempt from disclosure if the defendant carries its burden of establishing that the documents are the kind of information that would not customarily be released to the public. *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 147-48 (D.C. Cir. 2001); *Critical Mass*, 975 F.2d

at 879.  The current operating status of the submitting party has no effect on whether the *information* is of the type that would be publicly released.[3/]

As attested to by Mr. Silahian, the General Counsel of the successor to Company A, the information provided by Company A voluntarily to CBP was "not the type of information that Company A would provide to the public-at-large in the normal course of business." (Silahian Decl. ¶ 6.)  Furthermore, *in camera* review of the information disclosed in these documents (*i.e.*, Document Nos. 018-021, 025-030) confirms that assertion.  Although defendant was unable to procure a declaration from Company B, after *in camera* review of the documents submitted voluntarily by Company B (*i.e.*, Document Nos. 023-024), it is obvious from the face of the documents that they too contain information about business relationships and interactions that no business would customarily release to the public.  Therefore, with respect to the documents voluntarily submitted by both Companies A and B, the defendant has satisfied the *Critical Mass* test, and these documents are protected by Exemption 4.

## III. Involuntarily Submitted Documents

As to the remainder of the documents which were involuntarily submitted,[4/] the Court affirms its previous holding that under the *National Parks* test the information may not be withheld pursuant to Exemption 4.  The competitive harm prong of *National Parks* has been

---

[3/]Even if the *National Parks* test were applicable, it is not apparent that the operating status of Company B would be dispositive.  *See Inter Ocean Free Zone, Inc. v. U.S. Customs Serv.*, 982 F. Supp. 867, 872 (S.D. Fla. 1997) (noting that a weakened financial position for a company, alleged to be out of business by plaintiff, did not amount to a complete inability to suffer competitive harm); *Nadler v. Fed. Deposit Ins. Corp.*, 899 F. Supp. 158, 164 (S.D.N.Y. 1995) (determining that a company in receivership was entitled to the protection of Exemption 4).

[4/]Document Nos. 002-003, 006-007, 009-017, 031-032, 035.

interpreted to require both a showing of actual competition and a likelihood of substantial competitive injury.  *See CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1152 (D.C. Cir. 1987).  Based on its review of the documents and the pleadings of the parties, the Court concludes that defendant has failed to demonstrate a likelihood of substantial competitive injury because: (1) much of the information withheld is already publicly available, and (2) as to any information not already in the public domain, defendant still relies only on generalized and conclusory allegations of injury that do not suffice to stave off summary judgment.

Because plaintiff has filed with the Court one of the purportedly confidential documents as an attachment to its opposition to the motion for reconsideration (*see* Pl.'s Opp'n to Mot. for Recons., Ex. A), the Court finds that the information contained therein is now publicly available and disclosure of it cannot cause competitive harm.  "[I]f identical information is truly public, then enforcement of an exemption cannot fulfill its purposes."  *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999).  "To the extent that any data requested under FOIA are in the public domain, the submitter is unable to make any claim to confidentiality--a *sine qua non* of Exemption 4."  *CNA Financial*, 830 F.2d at 1154.  As defendant acknowledges that plaintiff attached to its memorandum an unredacted version of the entry document (Document No. 035) which it had been seeking to withhold (*see* Def.'s Reply on Mot. for Recons. at 2), it must be concluded that Document No. 035 is publicly available and can no longer qualify for protection under Exemption 4.  Furthermore, as this entry document contains "information that identifies a consignee or importer's choice of ocean or air carrier, bonded carrier and its federal tax identification number, customs broker or other filing agent, and estimated value of the merchandise" (*id*.), this information is now publicly available, and to the

extent that it was previously withheld from other documents based upon Exemption 4, it must be disclosed.[5/]

Furthermore, defendant again fails to establish a likelihood of substantial competitive injury because it offers only generalized and conclusory allegations. Although defendant identifies the general type of information that would be disclosed (Stump Decl. ¶ 9 ("supply chain information, specific data concerning the merchandise such as quantity and domestic value, the broker's or bonded carrier's federal tax identification (IRS) number, and other information")), and generically identifies the entities that could be injured (*id*. ¶ 9 ("[i]mporters, brokers and other business entities")), it identifies neither a specific victim nor a concrete injury, and therefore, it has again failed to explain *how and to whom* the disclosure of the information would likely result in a competitive injury.

In particular, as previously explained in the Court's Memorandum Opinion, because of the unique circumstances of this case, the disclosure of the information at issue would not result in a competitive injury to any legitimate entity. Thus, even if in the ordinary case the disclosure of supply chain information of a consignee could cause competitive harm to the consignee, that would not happen here since it appears that the consignee is fictitious. Moreover, as to Companies A and B, which are identified in the documents, plaintiff has already disclosed the identity of one of these companies, and there is no basis for the Court to conclude that the identity of the other company constitutes confidential business information. Indeed, the declaration submitted on behalf of Company A does not attempt to provide any facts as to why the disclosure of its information (with the exception of an IRS number) would cause any

---

[5/] The information appears in Document Nos. 003, 007, 009-017, 035.

competitive harm, but instead focuses on providing the circumstances surrounding the voluntary submission of information.[6] (*See generally* Silahian Decl. ¶¶ 6-7.)

Accordingly, the Court again rejects defendant's attempted showing under *National Parks* and requires the production of all involuntarily produced documents that have been withheld under Exemption 4.

## CONCLUSION

For the foregoing reasons, the Court will enter judgment for the defendant as to the withholding of the voluntarily submitted information pursuant to Exemption 4;[7] however, all other information withheld solely pursuant to Exemption 4 must be produced to plaintiff.[8]

An appropriate Order accompanies this Memorandum Opinion.

                                                                                                     s/
                                                    ELLEN SEGAL HUVELLE
                                                    United States District Judge

Date:   June 17, 2005

---

[6] While the IRS number may well be subject to protection, that issue is no longer significant in this case, since it appears on a document that is already in the public domain.

[7] Therefore, Document Nos. 018-021, 023-030 or portions thereof withheld pursuant to Exemption 4 need not be disclosed.

[8] Therefore, Document Nos. 002-003, 006-007, 009-017, 031-032, 035 or portions thereof withheld solely pursuant to Exemption 4 must be disclosed.